## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF
## IOWA CENTRAL DIVISION

| | |
|---|---|
| WHITNEY N. SCHLICHT,<br><br>PLAINTIFF,<br><br>vs.<br><br>PERFORMANT RECOVERY, INC.,<br><br>DEFENDANT. | **Civil Action No.**<br><br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, Whitney N. Schlicht, f/k/a Whitney N. Huntley ("Plaintiff" or "Whitney" or "Schlicht") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendant, Performant Recovery, Inc. (hereinafter "Defendant" or "Performant"), states as follows:

## I.    INTRODUCTION

1. This is an action for damages brought by an individual consumer for the Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II.    JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28

U.S.C. § 1367.  Venue in this District is proper in that the Defendants transact business in Iowa and the conduct complained of occurred here.

## III.   PARTIES

3.  Plaintiff, Schlicht, is a natural person residing in Boone County, Iowa.

4.  Defendant, Performant, is a business principally located in California who is engaged in the collection of debts owed to another in the State of Iowa.

5.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6.  The Defendant, Performant, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

## IV.   FACTUAL ALLEGATIONS

7.  At some point in time, the Plaintiff incurred a financial obligation to the US Department of Education that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

8.  Sometime thereafter, the debt was sold, assigned, or otherwise transferred to the Defendant for collection, when thereafter the Plaintiff began receiving collection communications from the Defendant in an attempt to collect this debt.

9. The Plaintiff began receiving collection correspondence from the Defendant sometime in January, 2013. The Plaintiff continued to receive collection correspondence approximately twice per month until May, 2013.

10. During that period of time the Plaintiff did not have funds available to make payment on her student loan. As such, she did not respond to the Defendant's correspondence.

11. Sometime during August, 2013, representatives of the Defendant began calling the Plaintiff's cell phone, her husband, her parents, and her grandparents in an attempt to locate and engage the Plaintiff in making payment on her student loans.

### *Communications with the Plaintiff's Spouse, David Schlicht*

12. The Plaintiff's spouse, David Schlicht, received a call from a male representative of the Defendant sometime in late September, 2013. The representative asked to speak with Whitney. David advised the representative the number called was not that of Whitney and that Whitney was not present. The representative requested Whitney's phone number. David refused to provide Whitney's phone number. The representative requested David relay a message to Whitney. David refused and requested the Defendant cease calling his cell phone.

13. David Schlicht received approximately two additional calls from a male representative of the Defendant. During at least one of those calls he again requested the Defendant cease contacting him.

14. On or about October 31, David Schlicht received a call from a female representative of the Defendant. The representative requested to speak with Whitney and attempted to retrieve her contact information. David again indicated

that the number called did not belong to that of Whitney and that he had repeatedly requested the Defendant cease contacting him. David then ended the call.

15. At no point in time did the Plaintiff authorize the Defendant to contact her spouse.

### *Communications with the Plaintiff's Parents, Darren and Teresa Huntley*

16. At some point in time during April, 2013, the Plaintiff's parents, Darren and Teresa Huntley, began receiving calls from the Defendant on their home phone. Representatives of the Defendant left numerous voice messages on the Huntley's home phone requesting to speak with Whitney Huntley, identifying themselves as Performant Recovery and indicating that the call was from a debt collector.

17. After receiving several calls from the Defendant, Darren Huntley, answered a call and spoke with a representative of the Defendant. Mr. Huntley advised the representative that Whitney Huntley no longer lived at their residence and requested the Defendant cease calling his home. The representative asked Mr. Huntley for the Plaintiff's cell phone number and address. Mr. Huntley refused to provide this information explaining there was a falling out in the family and he didn't feel it was appropriate to disclose same.

18. Subsequent to the communication wherein Mr. Huntley requested the Defendant cease calling, the Huntley's continued to receive several calls and voice messages from the Defendant placed to their home phone. The calls stopped sometime during May, 2013.

19. At no point in time did the Plaintiff authorize the Defendant to contact her parents.

## Communications with the Plaintiff, Whitney Schlicht

20. The Plaintiff began receiving collection calls from Defendant's representative, Sara Mason, sometime during August, 2013.

21. Ms. Mason was calling the Plaintiff from a local 515 area code phone number. The phone number was not disclosed on any of Performant's collection correspondence.

22. On or about August 29, 2013, the Plaintiff received a voice message from Ms. Mason. Ms. Mason called from the 515 area code phone number, indicated she was calling from Performant Recovery and requested the Plaintiff return the call.

23. On or about October 15, 2013, the Plaintiff received a voice message from Defendant's representative, Jason Miller, again from the local 515 area code phone number. Mr. Miller indicated he was calling from Performant Recovery and requested the Plaintiff return the call.

24. On or about October 25, 2013, the Plaintiff received a call from a male representative of the Defendant at her place of employment. The representative was calling the Plaintiff in an attempt to collect a debt. Among other statements, the representative advised the Plaintiff that she needed to arrange for payment immediately on her student loan or her wages would be garnished and her tax refunds would be offset. The Plaintiff attempted to advise the representative numerous times during the call that she was at work, that the call could affect her job and get her fired and that she could not receive collection calls at work. The representative continued to attempt to collect and push the Plaintiff to set up a

payment stating again that if she "did not act now" her wages would be garnished if she failed to do so. In an effort to end the conversation, the Plaintiff provided her debit card information and set up a monthly payment withdrawal. Notwithstanding the arranged payment and attempts to end the call, the representative continued to question the Plaintiff about her income and household assets until the Plaintiff ended the call.

25. At the time of the call on October 25, 2013, the Plaintiff had been at her new job less than a month and was still in the training process. At the time the Defendant's representative called, she was in the presence of not only her supervisor but also patrons of the bank waiting in line to be serviced.

26. At no time during the conversation on October 25, 2013, did the representative advise the Plaintiff of her right to consolidate her loans as an alternative to setting up a payment and which may have prevented a wage garnishment or tax offset.

27. At no time during the conversation on October 25, 2013, did the representative advise the Plaintiff that the call was from a debt collector and any information obtained would be used for that purpose.

28. After having time to process the conversation with the representative on October 25, 2013 and consider her options and inability to make payment, on October 28, 2013, the Plaintiff called her bank and stopped payment on the automatic withdrawal arranged for with the Defendant.

29. The Plaintiff attempted to call the Defendant back at the 515 area code phone number the Defendant had called her from only to find out the number had been disconnected.

30. The Plaintiff again received a call from a representative of the Defendant at her place of employment on or about January 07, 2014. The call was subsequent to the Plaintiff advising the Defendant she was not able to receive collection calls at her place of employment. The representative identified herself as Melissa. The Plaintiff's supervisor answered the phone and Melissa asked to speak with Whitney. The Plaintiff immediately stated to Melissa that she had requested the Defendant not contact her at work and that such calls could cause her to lose her job. The Plaintiff indicated that she had already received a garnishment notice from the US Department of Education and decided she would allow garnishment until the loan was paid. Melissa became argumentative with the Plaintiff, continued to interrupt the Plaintiff and continued to attempt to collect a debt from the Plaintiff despite the Plaintiff's request. The Plaintiff was forced to eventually hang up on Defendant's representative.

31. As a result of the Defendant's representative's continued collection calls, the Plaintiff has suffered from emotional distress including but not limited to: embarrassment, humiliation, anxiety, nervousness, confusion, frustration, anger, loss of concentration at work, loss of sleep, sense of helplessness, and fear.

## COUNT I.
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

32. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33. The Defendant and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the

FDCPA including, but not limited to, the following provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

    a.  1692b by contacting third parties for purposes other than to establish location information of the Plaintiff, without the express permission of the Plaintiff and after the Defendant had been asked to cease communication with said third parties;

    b.  1692c(a)(3) by contacting the Plaintiff place of employment when the debt collector knew or had reason to know the consumer's employer prohibited the Plaintiff from receiving such communication;

    c.  1692c(b) by contacting third parties in connection with the collection of a debt without the express permission of the Plaintiff and after the third party had requested the Defendant cease calling;

    d.  1692e(2)(A) through the false representation of the character, amount, or legal status of any debt;

    e.  1692e(10) through the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;

    f.  1692e(11) by failing, in every communication with the Plaintiff, to state the communication is from a debt collector and that any information obtained would be used for that purpose; and

    g.  1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

34. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory

damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant as follows:

1. For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiff;

2. For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant and for Plaintiff;

3. For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiff; and

4. For such other and further relief as may be just and proper.

## COUNT II.
## VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
### Iowa Code § 537.7103 et seq.

35. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36. The Defendant and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, the following provisions of the IDCPA, Iowa Code § 537.7103 et seq.

      a. 537.7103(1)(f) through an action or threat to take an action prohibited by this chapter or any other law;

b.  537.7103(2)(b) by causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously or at time known to be inconvenient, with intent to annoy, harass or threaten a person;

c.  537.7103(3)(a) by continuing to communicate in connection with the collection of a debt with third parties for purposes other than to verify location information of the Plaintiff and subsequent to the third party requesting the Defendant cease calling;

d.  537.7103(3)(a) by continuing to communicate or contact the Plaintiff's employer for purposes other than to verify information and subsequent to the Defendant being advised to cease contacting said employer;

e.  537.7103(4)(b) by failing, in every communication with the Plaintiff, to state the communication is from a debt collector and that any information obtained would be used for that purpose;

f.  537.7103(4)(e) through the false representation of the character, amount, or legal status of any debt;

37. As a result of each and every one of the Defendant's violations of the IDCPA, the Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant as follows:

1. For an award of actual damages pursuant to § 537.5201(1)(y)against the Defendant and for Plaintiff;

2. For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

3. For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

4. For such other and further relief as may be just and proper.

**WHEREFORE,** the Plaintiff prays for judgment against Defendant in an amount representing full and fair compensation for the injuries and damages as set forth above, for such attorneys' fees, interest, and costs as allowed by law, and for such other relied as may be just under the circumstances.

## V.    JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

  /s/ L. Ashley Zubal
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF